**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DON WILLIAMS d/b/a URTHCOM, LLC,    ) | FILED: MAY 15, 2008 |
| ) | |
| Plaintiff,    ) | 08cv2839        JH |
| ) | JUDGE HOLDERMAN |
| v.    ) | MAGISTRATE JUDGE ASHMAN |
| ) | |
| SOLID CONTACT BASEBALL, INC.,    ) | |
| ) | **PLAINTIFF DEMANDS** |
| Defendant.    ) | **TRIAL BY JURY** |

## COMPLAINT

NOW COMES the Plaintiff, DON WILLIAMS, d/b/a URTHCOM, LLC ("URTHCOM"), by and through his attorneys, KARBAL, COHEN, ECONOMOU, SILK, & DUNNE, LLC, and for its Complaint against Defendant, SOLID CONTACT BASEBALL, INC ("SCB") states:

## NATURE OF ACTION

1.    This is an action for breach of contract, wherein URTHCOM seeks damages for SCB's refusal to pay amounts due and owing under a contract concerning the production of a thirty minute infomercial, a two minute commercial, a one minute commercial and an instructional digital video disc, all staring baseball legend Rod Carew, as well as the creation of a marketing internet website.  SCB used the products provided by URTHCOM for its benefit and profit and advised that the products provided by URTHCOM were "overall from everybody, A+" work that "really looks great."  Thereafter, SCB refused to pay the balance due under the contract.

**PARTIES**

2.      Plaintiff DON WILLIAMS d/b/a URTHCOM, LLC, is a citizen of the State of Illinois.

3.      Defendant SCB is a corporation organized under the laws of the State of Connecticut and maintains its principal place of business in Connecticut.

**JURISDICTION AND VENUE**

4.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a), because the plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      The Court has specific personal jurisdiction over the Defendant in this matter because it transacted business in the State of Illinois when it entered into the contract that is the subject matter of this suit and partially performed the contract that is substantially connected to the State of Illinois because it required performance in Chicago, Illinois.  Defendant also otherwise does business in the State of Illinois.

6.      Venue is proper in this District, pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events or omissions giving rise to  URTHCOM's claims occurred in this District and because the contract  required performance in Chicago, Illinois which is in  this District.

**THE CONTRACT**

7.      On September 5, 2007, URTHCOM and SCB entered into a written contract for the "Agency Services" calling for URTHCOM to produce, among other things, a thirty (30) minute infomercial, a two minute commercial, a one minute commercial, an instructional digital

video disc and a marketing internet website (the "Contract"). A true and correct copy of the Contract is attached hereto as Exhibit A and incorporated herein by reference.

8.      The contract called for two base payments, $67,500 due upon signature and $67,500 due on November 1, 2007.

9.      SCB made the first $67,500 payment but failed to make the payment due on November 1, 2007.

10.     The contract also called for SCB to pay URTHCOM "MARK-UPS AND OUT-OF-POCKET EXPENSES" subject to a handling charge of 15% for such items, travel costs, and change fees ("Additional Items").

11.     To date, URTHCOM has invoiced SCB $24,702.23 for Additional Items under the Contract.

12.     The Contract required performance to be completed on or before November 1, 2007, but performance was delayed because SCB failed to provide legal copy, product price points, and final offer information as required by the Contract.

13.     On October 31, 2007, SCB advised that it wanted to add additional testimonials from Bobby Valentine Sports Academy to the previously produced infomercial and commercials thereby delaying delivery of the final versions of the infomercial and commercials.

14.     The Contract also required SCB to indemnify URTHCOM for any materials or images provided for use in the infomercial or commercials.

15.     SCB had previously provided Major League Baseball footage of Rod Carew to URTHCOM for use in the infomercial and commercial.

16.     Upon investigation, URTHCOM learned that SCB did not obtain approval from Major League Baseball to use the footage.  Thus, the project was further delayed based on SCB's failure to comply with the Contract.

17.     On or about January 7, 2008, URTHCOM received feedback and suggested changes from SCB legal for the first time.

18.     On or about January 15, 2008, URTHCOM received revised legal feedback regarding legal disclaimers.

19.     On or about January 29, 2008, SCB approved the final version of the infomercial and two commercials.

20.     On or about February 1, 2008, URTHCOM delivered the Instructional DVD described in the Contract to SCB and SCB accepted the Instructional DVD.

21.     On or about January 7, 2008, SCB advised that it wished to test the infomercial and commercials on its own ("Media Schedule").

22.     After SCB advised that it did not want URTHCOM to perform under the Media Schedule portion of the Contract, URTHCOM credited SCB $13,400 for this item leaving a balance due of $78,802.23.

## COUNT I
## BREACH OF CONTRACT

23.     Plaintiff incorporates by reference Paragraphs 1 through 22 above as if set forth here in full.

24.     URTHCOM has performed all required under the Contract accepts the Media Schedule and performance of that item has been excused.

25.     SCB accepted the infomercial, commercials, digital video disc and website and used the materials for profit.

26.     SCB admitted that the products provided by URTHCOM were "overall from everybody, A+" work that "really looks great."

27.     Despite repeated demands for payment, SCB refuses to pay URTHCOM the balance due under the Contract.

28.     As a result of SCB's Breach of the Contract URTHCOM has been damaged in the amount of $78,802.23 plus interest and attorneys fees and all costs and expenses incurred in this suit pursuant to the Contract which provides that in any litigation where a party seeks to enforce its rights under the Contract the prevailing party shall be awarded its reasonable attorney fees, and costs and expenses incurred.

WHEREFORE, Plaintiff, DON WILLIAMS d/b/a URTHCOM respectfully requests that the Court:

      a.     Enter Judgment in his favor and against the Defendant Solid Contact Baseball, Inc. in the amount of $78,802.23 plus prejudgment interest;

      b.     Award his attorney fees, expenses and costs pursuant to the Contract; and

      c.     For such other and further relief that this Court deems appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: May 15, 2008

**DON WILLIAMS d/b/a**
**URTHCOM, LLC**


By:     /s/ Charles F. Morrissey
    One of His Attorneys

Charles F. Morrissey
**KARBAL, COHEN, ECONOMOU,**
**SILK & DUNNE, LLC**
200 South Michigan Avenue, 20th Floor
Chicago, Illinois 60604
Tel:    (312) 431-3700
Fax:    (312) 431-3670

08cv2839
JUDGE HOLDERMAN
MAGISTRATE JUDGE ASHMAN

# EXHIBIT A



## LIST OF AGENCY SERVICES AND FEES

This LETTER OF AGREEMENT is entered into by and between UrthCom, LLC, an Illinois Corporation ("Agency") and Solid Contact Baseball, Inc. a Connecticut Corporation ("Client"), effective Sept 5, 2007.

<u>AGENCY SERVICES</u>
Agency agrees to act as the "Advertising and Marketing Agency of Record" for the Client under the terms of this agreement.  The following is a list of the services that the Agency will provide to the client.

    <u>Design/Creative</u>
    Agency will develop and implement the Client's creative/design related to advertising, marketing and/or promotion.  Items to be included:
- The Gap Hitter Infomercial Production – 30 Minute, 2 Minute, 1 Minute
- The Gap Hitter Instructional DVD Production
- Media Scheduling for Test
- Website Development

    Costs are based on a two day shoot on-location in the Chicago area.  Props and Gap Hitter equipment to be provided by Solid Contact Baseball.

    Production costs are budgeted to include:  storyboard development, script writing, location scouting, casting, director of photography, camera, grip and sound packages, makeup, wardrobe, production assistant, producer, extra grips, editing, graphics, voice-overs, and music.

    Media Schedule budget is based on quote provided ($13,400) to target key cable sports networks in Midwest, New England, Southeast, and Southwest.  Note:  pricing in 3rd and 4th quarter typically increases by 15 - 30%.

    Development of interactive website includes HTML and Flash programming, custom, and stock photography, video and audio clips, and integrating e-commerce applications.  Site pages will include meta-tagging techniques to increase hits through search engines.

<u>BILLING/TERMS</u>
Total fees for services listed above are $134,300 which are payable with the following schedule:
- Initial payment of $67,150 is due upon signature of Agreement
- Final Payment of $67,150 is due November 1, 2007

Agency invoices using Net 30 terms.  A monthly late fee of 1.5% of the invoice will be assessed for overdue payments.

<u>MARK-UPS AND OUT-OF-POCKET EXPENSES</u>
Agency's out-of-pocket expenses are subject to a handling charge of 15% (agency standard ranges from 18 – 30%) The proposal/retainer does not include costs such as photography & illustration, scanning, film separations, and photo manipulation/retouching.  It also does not include costs for presentation materials, such as color fiery proofs and presentation boards.

<u>JOB ESTIMATES</u>
Agency agrees to provide the Client with job estimates prior to starting every project/campaign.  Client approval of the estimate is the Agency's authorization to proceed with the project/campaign.

SHIPPING
Shipping and/or messenger charges are not included and will be billed at invoiced amount.

CHANGE ORDERS
Change orders will be issued for individual project components is the work requested by the client falls outside of the scope of previous agreements and allotted rounds of refinements. Verbal approval will be sufficient to keep the project component active. However, Agency reserves the rights to stop work on the additional assignment unless written authorization from Client is received within 5 working days of its submission.

CHANGE FEES
Agency reserves the right to submit additional invoices for professional fees and out-of-pocket fees, which are the result of any of the following changes in the scope or direction of the project: a change in senior management, increase in the scope of agreed upon activities, a change in client business strategy which causes a change in the direction of the project, an increase in scope of any agreed upon work activities, new deliverables not included in the proposal or changes to the positioning direction after sign off. Change fees will be discussed with Client prior to additional work beyond the scope outlined in this proposal being performed.

TAXES
Any withholding, value-added, or similar tax will be the responsibility of and shall be paid by Client. In the event Agency pays such tax, Client shall immediately reimburse Agency.

TRAVEL
Travel costs are billed at our costs and will be invoiced separately each month.

INDEMNIFICATION
The designs, marks, and materials created by Agency are believed not to infringe upon the rights of others. It is ultimately the responsibility of Client to institute a legal trademark search for all name and logo design choices (availability, registerablility), and Agency is free of any liability in this search. Any materials or images furnished to Agency by Client must be free and clear of any copyright or trademark problems. Client alone is liable if it fails to obtain correct usage rights. If any false statements or plagiarism occurs within copy or materials applied to Agency by Client or its agency, Client will be held responsible for any legal repercussions and accepts all liability.

SCOPE
Should guidelines by Client may be changed due to the results of consumer research, competitive action or other factors while the project is underway, Agency will modify and resubmit new cost estimates.

LIABILITY
Agency is responsible only for corrections directed by client. The ultimate proofing responsibility for all copy rests with client, included final printers' proofs at blueline state. Note: One Client signs Agency's final proof (fiery, laser, etc) as an O.K. to send artwork to any vendor (printing, engraving, etc) any additional changes that are requested by the client will incur charges for the printer's costs and for Agency's cost. These costs will be estimated separately.

SECURITY
Every effort will be made to maintain the strictest confidence concerning any material, plans, or policies divulged to us in the course of Agency's relations with Client.

DESIGN RIGHTS
The design, name, mark or other material in final form that is approved by client and selected for its use will be the exclusive property of client, upon full payment of services. All other designs and materials developed in the course of the design project shall remain property of Agency, as is common in the profession. Client's ownership of legal rights in the final form of the item it selected is exclusive to the market territory identified in the project brief and to the extent provided by applicable national laws and treaties. Client's use of the final artwork or designs, in market territories other than that market territory identified in the project brief, shall require Client's prior notification of and consent by Agency. Where applicable, legal protection and appropriate registration of a design, name mark or other material developed by Agency is Client's sole responsibility and should be done promptly after final approval to preserve such rights.

## OTHER

Throughout the life of this agreement between the Agency and the Client, there may be other business opportunities that arise. Agency and Client agree that this Letter of Agreement may be amended from time to time to include other services as long as both Agency and Client agree to the terms

## ATTORNEY FEES

In any litigation, arbitration, or other proceeding by which one party either seeks to enforce its rights under this Agreement (whether in contract, tort, or both) or seeks a declaration of any rights or obligations under this Agreement, the prevailing party shall be awarded its reasonable attorney fees, and costs and expenses incurred

## SIGNATURES

Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement. Each party represents and warrants to the other that the execution an delivery of the Agreement and the performance of such party's obligations hereunder have been duly authorized and that the Agreement is a valid and legal agreement binding on such party and enforceable in accordance with its terms.

UrthCom, LLC
an Illinois Company

By: Donald Williams
Title: President

Solid Contact Baseball, Inc
a Connecticut Company

By: Robert A. Moss, Jr.
Title: President