# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| DON WILLIAMS d/b/a URTHCOM, LLC, <br>          Plaintiff, <br>     v. <br> SOLID CONTACT BASEBALL, INC.. <br>          Defendants. | Case No. 08 C 2839 <br><br> Chief Judge Holderman <br><br> Magistrate Judge Ashman |
| SOLID CONTACT BASEBALL, INC., <br><br>          Counter-Plaintiff, <br>     v. <br> DON WILLIAMS, <br><br>          Counter-Defendant. | |
| SOLID CONTACT BASEBALL, INC., <br><br>          Third Party Plaintiff, <br>     v. <br> URTHCOM, LLC; PETER CEKO; AND CEKOM, CORP., <br><br>          Third Party Defendants. | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS COUNTS II – IV OF DEFENDANT'S COUNTERCLAIM

Plaintiff, Don Williams, by and through his attorneys, KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC, having moved this Court to Dismiss Counts II-IV of Defendant's Counterclaim, submits this Memorandum of Law.

## INTRODUCTION

Defendant, Solid Contact Baseball, Inc. ("SCB") has filed a four count counterclaim as well as a third party complaint purporting to allege claims for fraud, civil conspiracy and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* ("IUDTPA"). SCB's tactics are transparent. Through a pattern of misrepresentation and obfuscation, SCB seeks to transform this simple straightforward breach of contract case into a quagmire. The attempt fails, however, because the allegations purporting to support Counts II-IV of SCB's Counterclaim fail to state claims upon which relief can be granted as a matter of law.

## ARGUMENT

A complaint must set forth facts sufficient to demonstrate that a claim is plausible on its face. *Bell Atlantic Corp v. Twombly*, --- U.S. ---, 127 S.Ct.1955, 1974 (2007). With respect to the IUDTPA claim, SCB seeks damages under a statute that only provides injunctive relief. Because SCB does not seek injunctive relief and there is no threat of future harm, the claim fails as a matter of law. Additionally, SCB sets forth common law fraud and civil conspiracy claims with no regard for the heightened pleading standard of Fed.R.Civ.P. 9(b) ("Rule 9(b)"). These claims are also legally insufficient for a multitude of reasons. Because the Counts II-IV are insufficiently plead as a matter of law, these counts should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

I.  **COUNT III SHOULD BE DISMISSED BECAUSE THE IUDTPA ONLY PROVIDES FOR INJUNCTIVE RELIEF AND SCB DOES NOT SEEK OR SET FORTH A BASIS FOR INJUNCTIVE RELIEF.**

SCB seeks relief under the IUDTPA without setting forth which subsection of the Act is allegedly applicable to the myriad conclusions set forth in its complaint. *See* Counterclaim

¶¶ 43-45.  There are no facts plead in the Counterclaim that support relief under the Act.  *See id., passim*.  The IUDTPA only provides injunctive relief, not damages.  *See Comtel Technologies, Inc. v. Schwendener*, 2005 U.S. Dist. Lexis 8370, *31 (N.D. Ill. 2005) *citing Greenberg v. United Airlines*, 563 N.E.2d 1031, 1036 (Ill. App. 1990); *Greisz v. Household Bank*, 8 F.Supp. 2d 1031, 1044 (N.D. Ill. 1998).  SCB does not seek injunctive relief in its prayer for relief (Counterclaim, p. 22) nor would such a request be proper as it does not allege a threat of future harm.  *See id., citing Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1337 (Ill.App. 1995) ("Since, as discussed above, the Plaintiffs could not show a likelihood of future damage from the acts of the Defendants, their cause of action under the Uniform Deceptive Trade Practices Act must fail.").  It follows, that the IUDTPA claim fails as a matter of law and should be dismissed.

**II.    SCB'S COMMON LAW FRAUD CLAIM FAILS AS A MATTER OF LAW.**

Count II of SCB's Counterclaim purports to a claim for fraud in the inducement.  In Illinois[1], to state claim for common law fraud, a plaintiff must allege: (1) an intentionally false statement of material fact or the omission of a material fact; (2) that defendant knew the statement was false; (3) the defendant's intent to induce the plaintiff to act; (4) justifiable reliance on the statement; and (5) damages resulting from reliance.  *Fox v. Heimann*, 872 N.E.2d 126 (Ill.App. 1997).  In the case of an omission of a material fact, the plaintiff must allege and

---

[1] Illinois law applies to the legal issues that are the subject to this motion because the contract between Williams and SCB contract was negotiated in Illinois, delivered in Illinois and called for performance in Illinois.  This statement for purposes of this motion is not meant to imply that the laws of other states may not apply to certain issues in this case.  For example, SCB pleads a breach of fiduciary duty claim against Third Party Defendant Ceko.  Such a claim likely implicates the Delaware law because SCB is incorporated in Delaware.  *See, e.g., Resolution Trust Corp. v. Chapman*, 29 F.3d 1120, 1122 (7th Cir. 1994) (law of state of incorporation is presumed to apply to claims involving stewardship of corporation), *overruled on other grounds by Atheron v. FDIC*, 519 U.S. 213, 117 S.Ct. 666 (1997) *see also Foodcom Int'l v. Barry*, 463 F.Supp.2d 818, 830 (N.D. Ill. 2006) (law of the state of incorporation governs internal corporate affairs).

prove a duty to disclose by the defendant. *Connick v. Suzki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). Where a claim "sounds in fraud" it must be plead with particularity pursuant to Rule 9(b). *Brosellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007).

Rule 9(b) "operates as a screen against spurious fraud claims." *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Title Ins. Co.*, 412 F.3d 745-748-49 (7th Cir. 2005). To satisfy the heightened pleading requirement of Rule 9(b), a complaint must set forth with particularity "the identity of the person making the representation, the time, place and content of the misrepresentation and the method by which the misrepresentation was communicated." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). Put another way, the complaint must set forth the "who, what, when, where and how" of the fraud. *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 2d 918, 923 (7th Cir. 1992).

SCB's common law fraud allegations are organized in a somewhat confusing manner. It first sets for a section titled "Misrepresentations & Fraudulent Omissions" (the "Fraud Allegations"). *See* Counterclaim, ¶¶ 17-22. Thereafter, it attempts to plead fraud in Count II where it sets forth three general theories of fraud but fails to identify numerous alleged fraudulent acts set forth in the Fraud Allegations. *See id.* at ¶¶ 38-42; *compare* ¶¶ 21-22 (allegations of purported billing fraud) *with* ¶¶ 40 (identifying generally three alleged misrepresentations or omissions purporting to satisfy its pleading obligations with respect to fraud in the inducement). Because Count II incorporates the entirety of each and every paragraph of the complaint, Williams sets forth grounds for dismissal of the general allegations of billing fraud despite the fact that they are not explicitly plead in Count II.

Thus, we analyze whether SCB has stated a claim for fraud in the inducement based on its allegations that it was defrauded because: (1) Mr. Williams was operating as a d/b/a;

4

(2) Mr. Williams misrepresented his experience; (3) Mr. Williams failed to disclose Third-Party Defendant Ceko's alleged interest in URTHCOM, LLC and Cekom Corp.; and (4) that invoices sent by Mr. Williams contained charges that were not properly billable pursuant to the terms of the contract that is the subject of this case (the "LOA"). None of the conclusions plead in support of these allegations state a claim for common law fraud.

### A.      Williams' Status As a D/B/A Does Not Provide a Basis For Fraud.

SCB takes issue with the fact that Mr. Williams was operating as a d/b/a. There is nothing illegal or fraudulent about this practice under Illinois law. *See Main Street Development v. DeMicco*, 618 N.E.2d 442, 444 (Ill. App. 1993) ("The designation dba or doing business as . . . generally indicates a sole proprietorship or some other situation where the named person owns or transacts business under an assumed name."). Count II alleges that Williams committed common law fraud because SCB did not know the "true nature" of URTHCOM's business. There are no allegations concerning how Mr. Williams status as a d/b/a was material to the transaction as required to state a claim for fraud. A misrepresentation is material to a fraud claim only if it is the type of misrepresentation likely to be deemed significant to a reasonable person considering whether to enter into the transaction. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 499 (1976).

The Court can determine as a matter of law that Mr. Williams status d/b/a was not material to the LOA. SCB goes to great lengths to emphasize that Williams' "personal" experience was critical to its decision to enter into the LOA. Mr. Williams' failure to formally establish URTHCOM as a legal entity causes no damage to SCB. Absent more particular allegations of how Mr. Williams status as a d/b/a was material to the transaction and/or how this caused damage to SCB, this alleged basis for the common law fraud claim does not set forth

5

facts demonstrating that the claim is plausible let alone facts sufficient to meet the standard set forth in Rule 9(b).

### B. SCB Fails To Allege Facts Sufficient To Support A Fraud Claim Based on The Specious Allegation That Mr. Williams "Has No Experience."

It is with great restraint that Plaintiff does not dissect and disprove the specious allegations lodged against him in SCB's Counterclaim via a summary judgment motion at the outset of this case. Such a motion is entirely unnecessary, however, inasmuch as SCB's Counterclaim with respect to this allegation is wholly deficient in numerous respects including the fact that it does not comply with Rule 9(b) and does not allege facts sufficient to support the justifiable reliance element of common law fraud. It follows that the allegation that Mr. Williams misrepresented his experience is insufficient to support of a fraud claims as a matter of law.

"Accusations of fraud can do serious damage to the goodwill of a business firm or a professional person. People should be discouraged from tossing such accusations into complaints in order to induce advantageous settlements or for other ulterior purposes. Rule 9(b) does that." *Bankers Trust*, 959 F.2d at 683. In this case, SCB has the audacity to attack the professional reputation and goodwill of Mr. Williams who has decades of experience in the advertising industry. It alleges that he misrepresented his experience without setting forth a single statement specific statement by Mr. Williams that is allegedly untrue. Thus, there is no "what" in plead in the Counterclaim, let alone the "when" or "where" required by Rule 9(b). *See* Counterclaim, ¶ 17.

What's more, is SCB's admission via at least four "information and belief" allegations that it has absolutely no basis for the defamatory statements concerning Mr. Williams alleged lack of experience. *See* Counterclaim, ¶¶ 17, 25, 26 and 27. Such allegations do not suffice

6

unless the pleader sets forth the grounds for the suspicions. *See Uni\*Quality*, 974 F.2d at 924 (fraud allegations on "information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions."); *Bankers Trust*, 959 F.2d at 684 (allegations based on "information and belief" generally do not satisfy Rule 9(b)). This Court requires a strong inference of fraud based on specific facts, not conclusions based on suspicions. *See, e.g., United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 146 (N.D. Ill. 1996) (allegations pled on "information and belief" must be supported with "'specific facts supporting a strong inference of fraud.' Conclusory allegations will not suffice, and the facts must amount to more than the 'mere suspicion that the fraud occurred.'"); *see also Duane v. Altenburg*, 297 F.2d 515, 518 (7th Cir. 1962); 2A MOORE'S FEDERAL PRACTICE ¶9.03 (3d Ed.).

SCB's Counterclaim also fails to allege facts to support its conclusion that its reliance on the phantom statement was justifiable. "[J]ustifiable reliance is an essential element of common law fraud in Illinois." *Ryan v. Wersi Electronics CmbH and Co.*, 3 F.3d 174, 182 (7th Cir. 1993). "Although reliance is normally a question of fact, it can be determined as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be reached." *Cozzi Iron Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). When determining whether a plaintiff justifiably relied on an alleged representation the "crucial question is whether the plaintiff's conduct was unreasonable under the circumstances and in light of the information open to [it], that the law may properly say that this loss is [its] own responsibility." *West v. Western Cas. & Sur. Co.*, 846 F.2d 387, 394 (7th Cir. 1988). It is a hornbook rule that a party to a contract may not enter into a transaction with [its] eyes closed to available information and than charge that it has been deceived by another." *Adler v. William Blair & Co.*, 648 N.E.2d 226, 232 (Ill.App. 1995). In order to withstand a

motion to dismiss, a fraud complaint must plead facts demonstrating the claim is plausible. *See Twombly*, 127 S.Ct. at 1974.

SCB's Counterclaim alleges that SCB first met Williams on August 27, 2007 and wired him funds to begin production a mere twelve days later on September 7, 2007, having received and approved the LOA in principal on September 5, 2007. *See* Counterclaim, ¶¶ 14-15. According to the Counterclaim, during a single meeting with Williams he "expressly represented to SCB that he and his company had worked on numerous direct response projects." *Id.* at ¶ 13. While the Counterclaim does allege that Third Party Defendant Ceko represented to SCB that Mr. Williams had previously created a professional infomercial for the popular Boflex product, it is not alleged that Williams made such a representation. *Cf. id.* at ¶12.

SCB had ample opportunity to investigate Mr. Williams' background and choose not to do so. Having not even requested a curriculum vitae or a single reference, SCB cannot now turn this case into a quagmire with its "information and belief" fraud claim essentially painting Mr. Williams, a respected professional in the industry, as a individual with no experience. "The law will not allow a person to enter into a transaction with eyes closed to material facts and then claim fraud by deceit." *Miller v. Willaims Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 9 (Ill.App.2001). The time to investigate Mr. Williams background was before SCB entered into the contract, not after completion of performance. *West*, 846 F.2d at 394.

Given its level of sophistication and its ability to request and investigate Mr. Williams credentials, SCB cannot now seek to avoid its payment obligation based solely on its unsupported and conclusory assertion that Mr. Williams was overly optimistic in describing his professional experience. *Id.* An action for fraud cannot be based on an optimistic statement by a professional concerning his or her abilities. *See Indemnified Capital Investments, S.A. v.*

*R.J. O'Brien & Assoc.*, 12 F.3d 1406, 1413 (7th Cir. 1993) ("If actions for fraud could be successfully maintained every time someone optimistically represents his or her abilities, then our courts would be hopelessly deluged with fraud suits.").

SCB fails to plead the "what," "when" and "where" required by Rule 9(b) and fails to set forth a plausible claim for fraud. It follows that the allegations concerning Mr. Williams' experience are insufficient to support SCB's common law fraud claim.

### C. Mr. Williams Had No Duty To Disclose Any Financial Interests Of Mr. Ceko.

Accepting the allegations of the Counterclaim as true for purposes of this motion (and they are not), the allegation that Mr. Ceko had an undisclosed interest in the production cannot form the basis of a fraud claim against Mr. Williams as a matter of law. The allegation in this regard, is that Mr. Williams failed to disclose the alleged interest of Mr. Ceko. Thus, this allegation falls in the fraud by omission category. In order to state a claim for fraud by omission, a plaintiff must allege a duty to disclose. *See Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1009-10 (Ill. 2007) (there must be a fiduciary or other confidential relationship between the parties for silence to constitute fraud); *see also Connick v. Suuzuki Motor Co.*, 675 N.E.2d 584, 597-98 (Ill. 1996). SCB does not allege that Mr. Williams was in a fiduciary or confidential relationship with it. Thus, the claim based on fraud by omission fails as a matter of law.

**D.     The Allegations For Alleged Billing Fraud Are Barred By The Economic Loss Doctrine.**

Illinois recognizes the economic loss doctrine, disallowing tort remedies where damages are rooted in disappointed commercial or contractual expectations.[2] *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 435 N.E.2d 443 (1982) *accord E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872-73 (1986) ("Contract law . . . is well suited to commercial controversies . . . because the parties may set the terms of their own agreements."). The Illinois courts and the federal courts applying Illinois law, have held over and over again that where a party breaches a contract, the remedy is for breach of contract — not fraud. *See, e.g., R.J. O'Brien & Assoc., Inc. v. Forman*, 298 F.3d 653, 657 (7th Cir. 2002) *citing Congregation of the Passion v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1993) (Illinois law "dictates that, when a contract sets out the duties between the parties, recovery should be limited to contract damages, even though recovery in tort would otherwise be available under the common law."). A fraud claim cannot be premised on a breach of a contract. *Gen. Elec. Railcar Leasing Svs. Corp. v. Carlson Mktg. Group, Inc.*, 1992 WL 70319, at * 2 (N.D. Ill 1992). This is especially true when the contracting parties are sophisticated corporations. *Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986).

SCB sets forth in great detail, a melodrama about how it was allegedly defrauded based on vast conspiracy to inflate invoices submitted pursuant to the contract. *See* Counterclaim,

---

[2] The fact that Williams does not raise the economic loss doctrine as a defense to the other claims of SCB at this time should not be construed as a waiver. There has been a fair amount of recent debate concerning application of the intentional fraud exception to the doctrine which has evolved from a single statement in *dicta* in the *Moorman* decision. Williams reserves the right to make other arguments based on *Moorman* in the event that SCB is allowed to proceed with any of its tort claims in this contract action.

¶¶ 20-22.[3] These allegations concern claims for breach of contract —not fraud. When a party seeks to avoid *Moorman* by using a misrepresentation exception, the alleged misrepresentation must involve a duty that arises outside of the contract. *See, e.g., Fireman's Fund Ins. Co. v. SEC Donohue*, 679 N.E.2d 1197 (Ill. 1997); *see also Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901-02 (7th Cir. 2006) (claim for alleged "misrepresentation" that was governed by the terms of the contract not actionable under the Illinois Consumer Fraud and Deceptive Practices Act, because a contractual "'misrepresentation' occurs every time a defendant breaches a contract.").

Finally, and not insignificantly, SCB does not allege that it paid any of the disputed invoices. In fact, it alleges that it contested at least one of the invoices and a revised invoices was subsequently sent. *See* Counterclaim, ¶ 22 (second to last sentence describing the "replacement invoice"). Given that SCB does not allege payment any fraud claim based on the disputed invoices fails to meet the legal requirement of reliance and damages.

The claims concerning allegedly improper invoices submitted pursuant to the contract are barred by the economic loss doctrine. Thus, these allegations cannot provide the basis for SCB's common law fraud claim.

*       *       *

Because none of the conclusions set forth in SCB's Counterclaim are plead with the requisite particularity under Rule 9(b) and are otherwise insufficient to maintain a claim for common law fraud as a matter of law, Count II of SCB's Counterclaim should be dismissed.

---

[3] SCB does not explicitly state that these allegations are applicable to is common law fraud claim set forth in Count II of its Counterclaim. It does, however, appear to reference the allegations in its civil conspiracy count. Regardless of what legal label SCB seeks to attach to these allegations, they still fail as a matter of law.

### III.     THE CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW.

Equally unavailing is the effort by SCB to plead a civil conspiracy. To state a claim for civil conspiracy under Illinois law, a Plaintiff must plead: "(1) and agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) the over act was done pursuant to and in furtherance of the common scheme." *Vance v. Chandler*, 597 N.E.2d 233, 236 (Ill.App. 1992). Rule 9(b) prohibits "conclusory, vague and general allegations of a conspiracy." *Lachmund v. ADM Investor Svs., Inc.*, 191 F.3d 777, 785, n. 12 (7th Cir. 1999). Instead, the Court must find that participation in a conspiratorial "agreement" is "a reasonable inference which may be drawn from the conduct alleged." *First Int'l Bank v. Chapman & Cutler*, 837 F.2d 775, 780, n. 12 (7th Cir. 1988); *see also United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 146 (N.D. Ill. 1993) ("information and belief" allegations must be supported with "specific facts supporting a strong inference of fraud. Conclusory allegations will not suffice, and the facts must amount to more than the 'mere suspicion that the fraud occurred.'") (citation omitted).

Here, the entire conspiracy is plead on "information and belief." *See* Counterclaim, ¶¶ 47-48. The allegations do not suffice under Rule 9(b) as they are nothing less than conclusory. Furthermore, SCB alleges three purported overt acts by Williams all of which are based the legally untenable claims of fraud: (1) the phantom statement by Mr. Williams about his experience — which at best is an overly optimistic statement about professional experience and, therefore, not actionable; (2) the alleged concealment of Ceko's alleged interest in the project — which Williams did not have a duty to disclose; and (3) the alleged "conspiracy" to bill for matters outside the purview of the LOA — a claim that is barred by the economic loss doctrine.

*See Id.* § II (B), (C) and (D).  Attaching a legal conspiracy label to these allegations, does not change the fact that they are insufficient as a matter of law.

Furthermore, with respect to the billing dispute, SCB alleges nothing more than an agreement by Williams to breach his contract with SCB by billing for matters allegedly not within the purview of the LOA.  A breach of contract is not tortious or unlawful in the civil conspiracy context.  *See Eichmann v. National Hospital & Health Care Services, Inc.*, 719 N.E.2d 1141, 1145 (Ill.App. 1999).

Finally, SCB does not plead any facts supporting intent.  There is no rational economic motive for the alleged conspiracy.  Williams had a contract to produce the marketing products and it set forth the work that was compensable. Third Party Defendant Ceko is an investor in SCB; why would he want to defraud it and lose his investment?  Under the law, where there is no rational economic motive to conspire, and conduct of the parties is consistent with an equally plausible explanation, conduct will not give rise to the inference of a conspiracy.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986).  Because the "information and belief" allegations are not supported with any facts that make the conspiracy plausible based on a rational economic motive, the claim fails as a matter of law.

## CONCLUSION

For all of the foregoing reasons, Counts II-IV of Defendant's Counterclaim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

                    Respectfully Submitted,

                    **DON WILLIAMS**

                    By:   /s/ Charles F. Morrissey
                         One of his attorneys

Charles F. Morrissey
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
200 South Michigan Avenue
20th Floor
Chicago, Illinois 60604
(312) 431-3700