IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DON WILLIAMS d/b/a URTHCOM, LLC,  )<br>    Plaintiff,  )<br>v.  )<br>  )<br>SOLID CONTACT BASEBALL, INC.,  )<br>    Defendant.  )<br>_____ )<br>  )<br>SOLID CONTACT BASEBALL, INC.,  )<br>    Counter-Plaintiff,  )<br>v.  )<br>  )<br>DON WILLIAMS,  )<br>    Counter-Defendant.  )<br>_____ )<br>  )<br>SOLID CONTACT BASEBALL, INC.,  )<br>    Third Party Plaintiff,  )<br>v.  )<br>  )<br>URTHCOM, LLC, PETER CEKO, and  )<br>CEKOM CORP.,  )<br>    Third Party Defendants.  )<br>_____ )<br>  )<br>PETER CEKO, individually and derivatively  )<br>on behalf of SOLID CONTACT BASEBALL,  )<br>INC.,  )<br>    Third-Party Defendant/Counter  )<br>    Plaintiff,  )<br>v.  )<br>  )<br>SOLID CONTACT BASEBALL, INC.,  )<br>ROBERT A. MOSS, SR. and ROBERT A.  )<br>MOSS, JR.,  )<br>    Counter-Defendants.  )  | 08 C 2839<br><br>Judge Holderman<br>Magistrate Judge Ashman |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE AND DISMISS</u>**

      In support of their Motion to Strike and to Dismiss Counts II, III and IV of the Third

Party Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), Third-Party

Defendant/Counter-Plaintiff Peter Ceko ("Ceko"), and Third-Party Defendant Cekom Corp. ("Cekom") (collectively Third-Party Defendants), by their attorneys, state as follows:

## INTRODUCTION

Third-Party Plaintiff Solid Contact Baseball, Inc. ("SCB") has asserted claims for fraud in the inducement, violation of the Illinois Uniform Deceptive Trade Practices Act ("DTPA") and civil conspiracy against Ceko and Cekom in connection with the underlying contract dispute between SCB and Don Williams ("Williams") d/b/a Urthcom, LLC ("UrthCom") over the production of an infomercial. The gist of the Complaint against Ceko and Cekom is that Ceko fraudulently induced SCB into entering into a letter of agreement ("LOA") with Williams by touting Williams' experience while concealing the fact that Ceko had a financial interest in UrthCom.

## ARGUMENT

Counts II, III and IV of the Complaint should be dismissed because they do not come close to satisfying federal pleading requirements. A complaint should be dismissed where it does not set forth a "plausible" claim for relief. *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007) (complaint did not allege "enough facts to state a claim to relief that is plausible on its face."), *abrogating Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

SCB's fraud in the inducement and civil conspiracy claims fail to meet the heightened pleading requirement of Rule 9(b). In fact, the one fraudulent statement that Ceko purportedly made—that Williams produced an infomercial that he did not—is alleged "on information and belief," which cannot possibly state a fraud claim as a matter of law. SCB also barks up the wrong tree by seeking money damages under the Illinois Deceptive Trade Practices Act, which

only provides for injunctive relief. Not only is there nothing to enjoin (an executed contract), but Ceko is not even covered under that act because he did not undertake any alleged deceptive trade practices "in the course of his business, vocation or occupation." Rather, Ceko is alleged to have recommended the services of his brother-in-law. Counts II, III, and IV should be dismissed.

    **A.**    **THE COMPLAINT FAILS TO ALLEGE ANY FACTS IN SUPPORT OF ITS "ALTER EGO" THEORY.**

As an initial matter, the Complaint alleges that "[u]pon further information and belief … Cekom was and is a mere sham and shell organized and operated as the alter-ego of Ceko for his sole benefit and advantage." TP Compl. ¶ 9. Such conclusory allegations fail to establish Plaintiff's alter-ego theory even as a matter of federal notice pleading. *See Club Assistance Program, Inc. v. Zukerman*, 594 F. Supp. 341, 351 (N.D. Ill. 1984) (plaintiff's "conclusory allegation Genesis is defendants' 'alter ego' is not sufficient. Even the Rules' notice pleading requires the allegation of facts, not mere legal conclusions.").

As the Seventh Circuit has explained, "[i]n order to show that [Cekom] is an alter ego of [Ceko], [Plaintiff] would have had to show that [Cekom] is a sham corporation by considering such factors as whether [Cekom] observed corporate formalities, was adequately capitalized or maintained corporate records." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 385 (7th Cir. 2008). The Complaint does not so much as allege those factors as conclusions. Accordingly, SCB's "alter ego" allegations should be stricken.

    **B.**    **COUNT II FAILS TO STATE A CLAIM FOR FRAUD IN THE INDUCEMENT.**

SCB's fraud allegations must comport with the strictures of Rule 9(b), which "requires the plaintiff to state 'with particularity' any 'circumstances constituting fraud'. Although states of mind may be pleaded generally, the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst*

*& Young*, 901 F.2d 624, 627 (7th Cir. 1990). The Seventh Circuit has instructed that "[t]he heightened pleading standard requires the plaintiff to do more than the usual investigation before filing his complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir.1999) (citations omitted). *See generally* FED. R. CIV. P. 9(b).

Apart from the heightened pleading requirements, "[i]n order to constitute fraud in the inducement, the defendant must have made a false representation of a material fact knowing or believing it to be false and doing it for the purpose of inducing the plaintiff to act. The plaintiff must also show his reasonable belief in and reliance on the statement to his detriment." *Regensburger v. China Adoption Consultants*, *Ltd*., 138 F.3d 1201, 1207 (7th Cir. 1998).

Count II cannot satisfy these requirements. When stripped of its conclusions and rhetoric, the Complaint's meager fraud allegations against Ceko and Cekom amount to the following: Ceko introduced Rob Moss to Williams on or about August 27, 2007. Either at that meeting or sometime thereafter (the Complaint does not specify), Ceko recommended Williams' services and "represented to Moss and SCB that Williams had extensive experience in marketing in general, and direct response marketing in particular, and claimed that Williams had previously created a professional infomercial for the popular 'Bowflex' product. SCB thus commenced negotiations with Williams." TP Compl. ¶ 12.

The Complaint further alleges that "Ceko had an undisclosed financial interest in 'UrthCom, LLC,' either personally or through his alter-ego, Cekom," and that SCB's initial payment was directed to an account "held in the name of Cekom….. Ceko did not admit that SCB's payments under the LOA had been transferred into an account he controlled until finally

confronted by SCB in February, 2008. If Ceko's financial interest in 'UrthCom, LLC' had been known to SCB at the outset of its negotiations with Williams, SCB likely would not have entered into the LOA. At a minimum, SCB would have conducted further investigation into the qualifications and experience of Williams and 'Xtra Strength/UrthCom, LLC.'" *Id*. ¶ 18.

These allegations cannot possibly satisfy Rule 9(b) or state a claim for fraud in the inducement. To begin with, Ceko's alleged statement that Williams had "extensive experience" in producing infomercials is, at most, mere puffery that does not amount to an actionable statement of fact. It is settled law that "a representation is one of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a fact," and that "opinions are not actionable in fraud[.]" *Equity Capital Corp. v. Kreider Transp. Service, Inc.*, 967 F.2d 249, 254 (7th Cir. 1992) (citation and internal punctuation omitted).

In rejecting similar fraud allegations, the Seventh Circuit explained that "the representation of the O'Briens 'highly successful trading ability,' made in the context of soliciting a customer, can be construed as nothing but an opinion and not a false statement of material fact. If actions for fraud could be successfully maintained every time someone optimistically represents his or her abilities, then our courts would be hopelessly deluged with fraud suits." *Indemnified Capital Investments, SA. v. R.J. O'Brien & Associates, Inc.*, 12 F.3d 1406, 1413 (7th Cir. 1993). So too here, Ceko's purported touting of Williams' experience in recommending his services "can be construed as nothing but an opinion and not a false statement of material fact." *Id*.

Nor is Ceko's alleged statement that Williams created an infomercial for "Bowflex" actionable fraud because the Complaint does not allege that it was a false statement. Rather, the Complaint alleges that, "[u]pon information and belief, neither Williams nor any other employee

of the entity holding itself out as 'UrthCom, LLC' had ever had primary responsibility for the creation of a direct response marketing piece for the popular 'Bowflex' product at the time the LOA was executed." TP Compl. ¶ 26.

The Seventh Circuit is quite clear that statements made "on information and belief" cannot satisfy Rule 9(b). *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683-684 (7th Cir. 1992) (fraud allegations made "on information and belief" are "a clearly improper locution under the current federal rules"). In any event, the allegation that Williams never had "primary responsibility" for the creation of the Bowflex infomercial is a long way from alleging that he did not create it at all. While SCB is entitled to inferences in its favor, it is not entitled to rank speculation.

Finally, SCB fails to allege any intentional inducement or reasonable reliance based upon Ceko's "recommendation" of Williams while supposedly concealing his financial interest in UrthCom. TP Compl. ¶ 19. Instead, the Complaint alleges that "SCB *likely would not have* entered into the LOA" if Ceko had disclosed that interest. *Id*. ¶ 18 (emphasis added). Ceko's purported concealment of a financial interest in UrthCom does not amount to him making "a false representation of a material fact knowing or believing it to be false and doing it for the purpose of inducing the plaintiff to act." *Regensburger*, 138 F.3d at 1207. In any event, the Complaint plainly alleges that SCB may have proceeded with the contract irrespective of Ceko's interest in UrthCom. *Id*. Therefore, SCB fails to allege any reasonable reliance upon the purported concealment.

Recognizing the feebleness of its allegations against Ceko and Cekom, SCB tries to bolster its claim through the simple expedient of "lumping" them in with allegations against Williams and UrthCom. *See*, *e.g*., TP Compl. ¶¶ 17, 20, 39-40. SCB is not permitted to side-

step Rule 9(b) in this manner.  *See Donovan v. ABC-NACO Inc.*, 2002 WL 1553259, at *5 (N.D. Ill. July 15, 2002) (Plaintiffs' attempt to state viable claims against these Defendants by 'lumping' all the Defendants together under conclusory allegations of fraud constitutes improper pleading under Rule 9(b).").  Count II should therefore be dismissed.

      **C.**      **COUNT III FAILS TO STATE A CLAIM FOR VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT.**

Count III also suffers from a host of fatal deficiencies.  The Illinois Uniform Deceptive Trade Practices Act ("DTPA") prohibits "[a] person … *in the course of his or her business, vocation, or occupation*" to engage in certain enumerated practices.  815 ILCS 510/2(a) (emphasis added).  SCB does not even bother to identify which particular deceptive trade practice Ceko and Cekom are believed to have committed.  Instead, Count III states the bare legal conclusion that they violated the DTPA generally.  *See* Complaint, Count III.  Again, this fails to plead a cause of action.  "Although it is true … that the federal rules allow for notice pleading, mere conclusions are not sufficient to state a claim.  The inclusion of some operative facts upon which she bases her claim is required."  *Goble v. St. Anthony Medical Center*, 1990 WL 304257, at * 2 (N.D. Ill. May 2, 1990).

Presumably, SCB is attempting to allege that Ceko or Cekom deceived SCB about Williams' experience in producing infomercials.  If such is the case, there are no allegations whatsoever that Ceko or Cekom did so "in the course of his or her business, vocation, or occupation[.]"  The Complaint does not allege anywhere that Ceko or Cekom were employed by Williams or UrthCom, or otherwise acting as its agents.  Instead, the Complaint merely alleges that Ceko is Williams' brother-in-law.  TP Compl. ¶ 8.  It cannot be the law that a person recommending their relative's company renders that person an employee thereof.

Nor can Ceko's supposed "undisclosed financial interest" in UrthCom render it his "business, vocation, or occupation." If that were the case, then every shareholder of a corporation would *ipso facto* be an employee or agent of the corporation. Yet, "a corporation as a legal entity exists separately from its shareholders, directors and officers, who are not ordinarily liable for the corporation's obligations." *Cosgrove Distributors, Inc. v. Haff*, 343 Ill. App. 3d 426, 428-429 (3d Dist. 2003). There are no allegations that Ceko is somehow the alter-ego of UrthCom. Count III fails for this additional reason.

Moreover, Count III impermissibly seeks damages "in an amount to be proven at trial[.]" TP Compl. ¶ 45. The DTPA is quite clear, however, that "[a] person likely to be damaged by a deceptive trade practice of another may be granted *injunctive relief* upon terms that the court considers reasonable." 815 ILCS 510/3 (emphasis added). *See also Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 859 (1st Dist. 1995) ("[T]he Act allows for injunctive relief, not an award of damages.").

Count III does not seek injunctive relief, and there is nothing to enjoin in any event. The Complaint is based upon events that have already transpired—namely, Ceko or Cekom's purported misrepresentation of Williams' experience, which caused SCB to enter into a contract with Williams to produce an infomercial. In *Prime Cable*, plaintiff brought a claim under the DTPA relating "to an overcharge for the cost of the live concert due to its less-than-promised length." *Id*. In dismissing the claim, the court reasoned that, "[i]t is not reasonably likely that the Plaintiffs will be misled as to the concert's duration or that they will be damaged in the future, even assuming the concert's rebroadcast since that concert was originally broadcast live and could not be altered in the future." *Id*.

So too here, SCB cannot be further misled about Williams' experience because the contract is a *fait accompli*. SCB obviously does not need an injunction against Ceko prohibiting him from making further making representations about Williams' experience in producing infomercials.

Even on the merits, Ceko's alleged statement opining about Williams' experience is not actionable because it amounts to no more than "puffery." *In Smith v. American Arbitration Ass'n, Inc.*, 233 F.3d 502 (7th Cir. 2000), the Seventh Circuit rejected a DTPA claim based upon an alleged "promise" in a AAA guide to "'monitor ... balance in terms of gender, racial and ethnic diversity' or maintain 'a national panel of experts, diverse in gender and ethnicity[.]'" *Id*. at 505. The court reasoned that "[l]aws forbidding deceptive advertising are inapplicable to 'puffing,' which is to say to general quality claims too vague to create warranted reliance." *Id*. at 507. Nor was there anything to enjoin because, like here, the challenged conduct (in that case plaintiff's arbitration) had already occurred. Thus, plaintiff's "claim for prospective relief against the allegedly deceptive advertising, the only relief sought, is moot." *Id*. at 508. Count III should therefore be dismissed.

### D.  COUNT IV FAILS TO STATE A CLAIM FOR CIVIL CONSPIRACY

In order to state a claim for civil conspiracy, SCB must allege "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007).

The particularity requirements of Rule 9(b) apply because SCB's conspiracy claim is based upon the underlying tort of fraudulent inducement. *See id*. *See also Spungen v.*

*Forman*, 2007 WL 1114053, at *6 (N.D. Ill. April 9, 2007) (conspiracy claim based on fraud "must satisfy the heightened pleading standard.") (citing *Borsellino*).

Count IV should likewise be dismissed because, as discussed above, the underlying fraud claim on which it is based fails to state a cause of action. Not only are the fraud allegations woefully deficient under Rule 9(b), but Ceko's purported statements concerning Williams' experience are otherwise non-actionable statements of opinion. Thus, no "tortious act … in furtherance of the agreement that caused an injury to the plaintiff" occurred. *Borsellino*, 477 F.3d at 509.

Nor does SCB allege particularized facts detailing the conspiracy. The Complaint merely alleges that, "*on information and belief*, UrthCom, Ceko and Cekom, along with Williams, conspired to mislead and deceive SCB with respect to the success and experience of Williams and 'UrthCom, LLC' in the filed of direct response marketing, and conspired to engage in other unlawful, unfair and deceptive acts, all in order to induce SCB to enter into an [sic] contract which SCB otherwise would not have agreed to." TP Compl. ¶ 47. As also discussed above, fraud claims made "on information and belief" do not satisfy Rule 9(b).

Moreover, just like in *Spungen,* "Plaintiff'*'*s complaint … only alleges general allegations of the conspiracy and fails to provide sufficient detail as to terms of any agreement between the Defendants, the approximate time that the agreement was reached or other specifics necessary to satisfy Rule 9(b)." 2007 WL 1114053, at *6. *See also Borsellino*, 477 F.3d at 509 (7th Cir. 2007) (dismissing conspiracy claim where "the plaintiffs have offered none of the critical details regarding the alleged fraud conspiracy").

Here, the Complaint alleges only the bare conclusion, "on information and belief," that "Williams, UrthCom, Ceko and Cekom secretly understood and agreed" to conspire against

Plaintiff by overstating Williams' experience and overcharging for Williams' services. TP Compl. ¶¶ 48-49. Accordingly, Plaintiff's civil conspiracy count should also be dismissed "because the complaint fails to state with particularity the circumstances constituting the conspiracy between" Ceko, Cekom, Williams, and UrthCom. *Borsellino*, 477 F.3d at 509 (7th Cir. 2007).

## CONCLUSION

For all the reasons set forth above, Third-Party Defendant/Counter-Plaintiff Peter Ceko and Third-Party Defendant Cekom Corp. respectfully request that this Court strike Plaintiff's alter-ego allegations and dismiss Counts II, III and IV of the Third-Party Complaint as against them.

**PETER CEKO AND CEKOM CORP.**

By: __/s/ Daniel C. McCabe__
One of his attorneys

GOULD & RATNER LLP
Daniel C. McCabe
Mark D. Brookstein
222 N. LaSalle Street, Suite 800
Chicago, IL 60601
(312) 236-3003