**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DON WILLIAMS d/b/a URTHCOM, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.    08cv2839    JH |
| v. | ) | JUDGE HOLDERMAN |
| | ) | MAGISTRATE JUDGE ASHMAN |
| SOLID CONTACT BASEBALL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SOLID CONTACT BASEBALL, INC., | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DON WILLIAMS, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| SOLID CONTACT BASEBALL, INC., | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| URTHCOM, LLC; PETER CEKO; AND | ) | |
| CEKOM CORP; | ) | |
| | ) | |
| Third Party Defendants. | ) | |

**SOLID CONTACT BASEBALL'S EMERGENCY MOTION TO STRIKE
PETER CEKO'S "VERIFIED COUNTERCLAIM"**

Defendant, Counter-Plaintiff and Third Party Plaintiff, SOLID CONTACT BASEBALL,

INC. ("SCB"), by and through its attorneys, for its EMERGENCY MOTION TO STRIKE

PETER CEKO'S VERIFIED COUNTERCLAIM, states as follows:

1.     On July 18, 2008, SCB filed a First Amended Counterclaim against original Plaintiff Don Williams, asserting claims for breach of contract, as well as claims for fraud in the inducement, civil conspiracy, and unfair competition.  On that same date, SCB also filed a Third Party Complaint, adding Williams' alter-ego "UrthCom, LLC," as well as Williams' alleged co-conspirator Peter Ceko and his company, Cekom Corporation, to the case.  The Third Party Complaint alleges, *inter alia*, that Ceko—a former Director of SCB—breached his fiduciary duties to the corporation in a number of ways, including by self-dealing, conspiring to commit fraud, and sharing SCB-confidential information with third parties.

2.     During his tenure as a Director, Ceko was provided access to sensitive, confidential, proprietary, and trade secret information of SCB, including without limitation financial information such as SCB's expenditures, revenue, and losses.  It was made clear to Ceko by SCB management that this material and information was confidential, and that it was one of Ceko's duties as a Board member to preserve that confidentiality. *See* Declaration of SCB President Robert A. Moss, Jr. ("Moss Decl."), attached hereto as Exhibit A, at ¶ 5.

3.     Ceko was relieved of his duties as Director of SCB on June 20, 2008, by reason of the same facts alleged in SCB's Third Party Complaint, but he remains a minority shareholder in SCB.  (Moss Decl. ¶ 3).

4.     Like any other shareholder, Ceko was entitled, under Delaware corporate law and the By-laws of SCB, to inspect SCB's corporate books and records for a "proper purpose." Ceko exercised his right and demanded such an inspection earlier this summer.  Concerned whether Ceko's demand was in fact being made primarily for a proper purpose, SCB conditioned Ceko's inspection on his agreement to execute a confidentiality agreement prior to the inspection. (Moss Decl. ¶ 6).  A true and correct copy of the fully-executed agreement (the "Confidentiality

Agreement") is attached hereto as Exhibit B.   Following Ceko's execution of the Confidentiality Agreement, the books and records he requested were made available to Ceko's attorneys on July 28, 2008.  (Moss Decl. ¶ 6).

5.     The Confidentiality Agreement defines "Confidential Information" to include "certain information and materials related to SCB pertaining, but not limited to, SCB's business, services, prospects, consultants, stockholders, customers, clients, business plans, methods and other books and records."  (Ex. B at p. 1)  The Confidentiality Agreement requires Ceko: (a)  "to maintain the Confidential Information in strict confidence," (b) "not to use the Confidential Information except" for Ceko's stated proper purpose, and (c) "not to disclose the Confidential Information to anyone except such of his attorneys and advisors (collectively, the 'Representatives') as necessary to carry out" Ceko's stated proper purpose.  (Ex. B, ¶1.1; emphasis in original.)  Ceko further agreed that any breach of the Confidentiality Agreement "would cause irreparable harm to SCB."  (Ex. B, ¶2.5)

6.     On August 18, 2008, Ceko filed his "Verified Counterclaim" in this case (currently available at Docket Entry No. 35), which purports to state claims against SCB and new parties Robert A. Moss, Sr. and Robert A. Moss, Jr. individually.   The "Verified Counterclaim" contains, in many instances, factual allegations related to SCB's share value, share allocations, expenses, sales, income, cash-flow, and losses which could only be based on confidential information Ceko obtained either (i) through the course of his duties as a former Director of SCB or (ii) from his inspection of SCB's corporate books and records.  (Moss Decl. ¶¶ 8-9).

7.     For example, Paragraphs 12-14 of the Verified Counterclaim contain allegations related to the share values of specific SCB shareholders.  Paragraph 16 alleges a specific amount

of capital that SCB has raised to date. Paragraph 25 contains allegations related to specific SCB expenditures, payments and share distributions. Paragraph 27 alleges specific losses and monthly operating expenditures. Paragraph 42 alleges specific sales, and again alleges specific amounts related to expenditures and capital raised. Similarly, the letter attached as Exhibit 3 to the Verified Counterclaim references a SCB financial report that was provided to Mr. Ceko on a confidential basis. (Moss Decl. ¶ 9). The specific dollar amounts, percentages of ownership and sales numbers referenced in these materials are exactly the type of sensitive financial information that SCB has expressly protected from public disclosure. (*Id*.)

8.      Ceko's right to inspect SCB's books and records was limited under Delaware law[1] by SCB's right to keep its sensitive information confidential. *See Schoon v. Troy Corp.*, No. Civ. A. 1677-N, 2006 WL 1851481, *2 (Del. Ch. 2006) ("court must balance the stockholder's statutory right to inspect the corporation's books and records with the corporation's legitimate interest to safeguard its highly confidential information from its competitors"); *CM & M Group, Inc. v. Carroll*, 453 A.2d 788, 793 (Del. 1982) ("Counterposed to the duty to protect the rights of the stockholder, the court has the duty to safeguard the rights and legitimate interests of the corporation").

9.      The Confidentiality Agreement is an enforceable contract, and, under Delaware law, SCB was within its rights to insist upon the Confidentiality Agreement as a condition of Ceko's inspection. *See Pershing Square, L.P. v. Ceridian Corp.*, 923 A.2d 810, 816 (Del. Ch. 2007) (holding that a shareholder who demonstrates a proper purpose for inspection of corporate books and records may nonetheless "be limited in its use of any information where the

---

[1]      This Court must apply the choice-of-law principles of the forum state, Illinois. *Bagdon v. Bridgestone/Firestone, Inc*., 916 F.2d 379, 382 (7th Cir. 1990). Illinois "uses as its choice-of-law principle in corporate governance the internal affairs doctrine." *Id*. As such, Delaware law is applicable to SCB's and Ceko's rights vis-à-vis inspection of books and records, because SCB is a Delaware corporation. *Id*. at 382-383.

information is confidential and release would harm the company"); *see also NAMA Holdings, LLC v. World Market Center Venture, LLC*, 948 A.2d 411, 42-421 (Del. Ch. 2007) (efforts to limit scope of books and records inspection, including insistence on execution of confidentiality agreement, were reasonable in light of sensitivity of information); *Disney v. Walt Disney Corp.*, 857 A.2d 444, 447-448 (Del. Ch. 2004) (noting "presumption" under Delaware law that production of "nonpublic corporate books and records" to a stockholder making a demand should be conditioned upon a reasonable confidentiality order or agreement).

10.     Ceko's inclusion of confidential information in his Verified Counterclaim was in breach of both the Confidentiality Agreement and his fiduciary duties as a former Director of SCB.  Without waiving any of its rights under the law or the Confidentiality Agreement, SCB's litigation counsel put Ceko on notice of his breach by letter dated August 20, 2008 (a true and correct copy of which is attached hereto as Ex. C), and requested that Ceko immediately withdraw the Verified Counterclaim and all exhibits, to avoid further damage to SCB.

11.     In response to SCB's letter, Ceko's counsel sent a letter dated August 21, 2008 (a true and correct copy of which is attached hereto as Ex. D), refusing to withdraw the Verified Counterclaim, and denying that Ceko has done anything wrong by filing that pleading publicly. Tellingly, Ceko's attorney did not deny that the allegations of the Verified Counterclaim are derived from information learned during Ceko's time as a Director and/or from his inspection of SCB's books and records.  Rather, refusing to acknowledge that any information contained in the Verified Counterclaim was confidential, Ceko's attorney asserted that Ceko is "without question, entitled to discovery of those documents under the broad discovery provisions of the Federal Rules," although the discoverability of documents under proper circumstances has nothing to do

with Ceko's breach of his obligations as a former Director and under the Confidentiality Agreement.

12.　　Ceko's assertions that the information included in the Verified Counterclaim are not confidential are wrong.  SCB is a small, privately-held corporation.  Its financial information, including information related to share value, share allocations, expenses, sales, income, cash-flow, and losses, is sensitive, confidential, and never made publicly available.  (Moss. Decl. ¶ 4). The full details of SCB's financial and other confidential information are distributed only to SCB's management and Board, and each Director is individually under a duty to preserve confidentiality.[2]  (*Id*.).  Delaware courts have noted that maintaining confidentiality is of particular concern "in the context of privately held firms," such as SCB.  *Disney*, 857 A.2d at 448; *see also Stroud v. Grace,* 606 A.2d 75, 90 (Del. 1992) (any full and clear statement of a privately-held corporation's business condition is "by its very nature confidential").

13.　　Pursuant to Rule 5.2 of the Federal Rules, this Court has the ability to order that filings be made under seal, or in a redacted format, and to "limit or prohibit a non-party's remote electronic access" to documents filed with this Court.  If Ceko wished to use SCB's Confidential Information to pursue claims against SCB in this Court, the proper course of action would have been for Ceko to move for leave to file the Verified Counterclaim under seal, and then let this Court determine what, if any information contained therein should be made publicly available through the course of litigation.  *Disney*, 857 A.2d at 448, 450 ("a stockholder making a books

---

[2]　　Furthermore, although since SCB's inception in 1999, no shareholder other than Ceko has demanded to inspect SCB's books and records, if any shareholder had requested to inspect SCB's corporate books and records, he/she would have been made aware of the duty to keep sensitive information confidential, and would have been required to execute a confidentiality agreement similar to that executed by Ceko, prior to such an inspection. Likewise, going forward, to the extent that any shareholder demands to inspect the corporate books and records for a proper purpose, he or she will also be required to execute a confidentiality agreement.  (Moss Decl. ¶ 7). This policy is enforceable under Delaware law.  *Stroud,* 606 A.2d at 90 (confidentiality policy whereby shareholders would only be provided with current financial statements upon written request for information and execution of confidentiality agreement upheld as reasonable).

and records demand can expect that documents designated as confidential pursuant to a reasonable confidentiality agreement will remain confidential unless the stockholder concludes that grounds exist to initiate litigation and ***the court in which that proceeding is brought determines to include those documents in the public record***") (emphasis added).  But Ceko "cannot use confidential information received for the proper purpose of investigate and seeking to remediate wrongdoing for the purpose of being a self-appointed publisher of [SCB's] proprietary information." *Id*. at 450.

14.    SCB will not object to a motion by Ceko for leave to file the complete version of his Counterclaim under seal, with only a redacted version, if appropriate, filed publicly. *See Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) (condoning parallel filings and court orders where necessary: "one full version containing all details" to be filed under seal, and "another redacted version with confidential information omitted" to be filed publicly).  Filing his Counterclaim wholly under seal, or in two versions (a redacted, public version and an unredacted, sealed version) will do no harm to Ceko.  To the contrary, if the current (*i.e.*, unredacted) version of Ceko's Verified Counterclaim continues to be available to the public via the Court's electronic filing system, SCB will continue to suffer irreparable harm for which there is no adequate remedy at law.  (Moss. Decl. ¶ 10).

## <u>CONCLUSION</u>

WHEREFORE, for all of the foregoing reasons, SCB respectfully requests that this Court grant its motion, strike Ceko's "Verified Counterclaim," and permanently remove the unredacted version of the "Verified Counterclaim" from the Court's electronic filing system.

Respectfully submitted,


____s/ Jami A. Gekas_____
One of the Attorneys for Defendant/Counter-
Plaintiff/Third Party Plaintiff
SOLID CONTACT BASEBALL, INC.

Dated:  August 25, 2008

Michael Dockterman
Jami A. Gekas
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL  60606-1229
(312) 201-2000
Facsimile:  (312) 201-2555

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a copy of the foregoing SOLID CONTACT BASEBALL'S EMERGENCY MOTION TO STRIKE PETER CEKO'S "VERIFIED COUNTERCLAIM" was served via the CM/ECF electronic filing system on this 25th day of August, 2008, and thereby served upon counsel for all parties.

By:  <u>s/ Jami A. Gekas</u>

One of the Attorneys for Defendant/Counter-
Plaintiff/Third Party Plaintiff,
SOLID CONTACT BASEBALL, INC.

# **<u>Exhibit A</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DON WILLIAMS d/b/a URTHCOM, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.    08cv2839    JH |
| v. | ) | JUDGE HOLDERMAN |
| | ) | MAGISTRATE JUDGE ASHMAN |
| SOLID CONTACT BASEBALL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SOLID CONTACT BASEBALL, INC., | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DON WILLIAMS, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| SOLID CONTACT BASEBALL, INC., | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| URTHCOM, LLC; PETER CEKO; AND | ) | |
| CEKOM CORP; | ) | |
| | ) | |
| Third Party Defendants. | ) | |

**DECLARATION OF ROBERT A. MOSS, JR.**

I, Robert A. Moss, Jr., declare as follows:

1.     I am over 18 years of age.  I have personal knowledge of the facts stated herein and if called to testify could competently testify to the following matters.

2.     I am the President of Solid Contact Baseball, Inc. ("SCB").  I am also a member of SCB's Board of Directors (the "Board").

1

3.    Peter Ceko ("Ceko") is a former member of SCB's Board.  Ceko was removed from the Board on  June 20, 2008, but remains a minority shareholder in SCB.

4.    SCB's financial information, including information related to share value, share allocations, expenses, sales, income, cash-flow, and losses, is sensitive, confidential, and never made publicly available.  The full details of SCB's financial and other confidential information are disclosed only to SCB's management and Board, and each Director is individually under a duty to preserve confidentiality.

5.    During his tenure as a Director, Ceko was provided access to sensitive, confidential, proprietary, and trade secret information of SCB, including without limitation financial information such as SCB's expenditures, revenue, and losses.  It was made clear to Ceko by SCB management that this material and information was confidential, and that it was one of Ceko's duties as a Board member to preserve that confidentiality.

6.    On July 28, 2008, Ceko's attorneys were allowed to inspect the corporate books and records of SCB.  SCB's corporate books and records contain sensitive, confidential, proprietary, and trade secret information of SCB.  Ceko was therefore required to execute a Confidentiality Agreement as a condition of his attorney's inspection.

7.    Since SCB's inception in 1999, no shareholder other than Ceko has demanded to inspect SCB's books and records.  If any shareholder had requested to inspect SCB's corporate books and records, he/she would have been made aware of the duty to keep sensitive information confidential, and would have been required to execute a confidentiality agreement similar to that executed by Ceko, prior to such an inspection.  Likewise, going forward, to the extent that any shareholder demands to inspect the corporate books and records for a proper purpose, he or she will also be required to execute a confidentiality agreement.

8.    SCB's litigation counsel has forwarded to me a copy of a document which I understand to be Ceko's "Verified Counterclaim," filed on August 18, 2008 in this case.  In connection with my responsibilities as a corporate officer and Director of SCB, I have reviewed that document.

9.    It is my opinion that a number of the allegations of the Verified Counterclaim are obviously based on confidential information Ceko learned through the course of his duties as a former Director of SCB and/or from his counsel's inspection of SCB's corporate books and records.   In particular, I believe Paragraphs 12-14, 16, 18-19, 25, 27, and 42 of the Verified Counterclaim contain detailed allegations related to SCB's share values, share allocations, expenses, sales, income, cash-flow, and losses that either disclose or rely, in whole or in part, upon SCB's confidential information.  Similarly, the letter attached as Exhibit 3 to the Verified Counterclaim references a SCB financial report that was provided to Mr. Ceko on a confidential basis.  The specific dollar amounts, percentages of ownership and sales numbers referenced in these materials are exactly the type of information that SCB protects from public disclosure, and always maintains on a confidential basis.

10.    I understand from SCB's litigation counsel that Ceko's Verified Counterclaim is currently publicly available through the court's electronic filing system.  This is very damaging

to SCB, as the Verified Counterclaim contains sensitive financial and other confidential information of SCB, that our competitors would be interested in seeing. For example, our competitors would no doubt be interested to learn how many units we have sold, and what our current financial position is. There is no value to either the corporation or its stockholders in having this information made public. It is my opinion that SCB will continue to suffer harm and damage unless and until the Verified Counterclaim document is removed from the Court's public filing system.


        I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.


        Executed this $\underline{25}$ day of August, 2008, in New London, Connecticut.




                                    Robert A. Moss, Jr.

# **<u>Exhibit B</u>**

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (this "Agreement") is made and entered into effective as of the 28th day of July, 2008, by and between **Peter Ceko**, an individual residing at 457 Oak Knoll Road, Barrington Hills, Illinois ("Ceko"), and **Solid Contact Baseball, Inc.**, a Delaware corporation ("SCB"). Each of Ceko and SCB may hereinafter individually be referred to as a "Party" and collectively as the "Parties".

WHEREAS, Ceko has requested to inspect the books and records of SCB for a proper purpose in his capacity as a stockholder of SCB in accordance with Section 1.11 of the SCB By-laws and Section 220 of the Delaware General Corporation Law (the "Purpose");

WHEREAS, litigation is pending between SCB and Ceko in the State of Illinois (the "Litigation"), whereby the Parties are governed by applicable rules of civil procedure relating to the request and production of documents and other information concerning matters giving rise to the Litigation;

WHEREAS, without waiving any rights or remedies available to it in connection with the Litigation, including challenging the confidential designations of particular documents by bringing an appropriate motion before the court, and solely in an effort to comply with Ceko's request as a stockholder to inspect the books and records of the Company for the Purpose, SCB agrees to disclose to Ceko and his Representatives (as defined below) certain information and materials related to SCB pertaining, but not limited to, SCB's business, services, prospects, consultants, stockholders, customers, clients, business plans, methods and other books and records (the "Confidential Information"), all of which SCB considers to be confidential and proprietary, upon the terms and conditions set forth hereunder.

NOW, THEREFORE, the Parties agree as follows:

1.      **Confidentiality**

1.1      Ceko hereby agrees: (a) to maintain the Confidential Information in strict confidence; (b) not to use the Confidential Information except for the Purpose; and (c) not to disclose the Confidential Information to anyone except such of his attorneys and advisors (collectively, the "Representatives") as necessary to carry out the Purpose, each of whom must be advised of the confidential nature of the Confidential Information and of the terms of this Agreement and must agree to abide by such terms. Ceko shall be responsible for any breach of this Agreement by any of his Representatives and will immediately notify SCB of any unauthorized use or disclosure of the Confidential Information.

1.2      In the event that Ceko or any of his Representatives becomes legally compelled to disclose any of the Confidential Information, Ceko shall provide timely written notice thereof to SCB so that SCB, at its sole option, may attempt to prevent the disclosure of such Confidential Information or seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. In the event that SCB is unable to obtain such protective order or other appropriate remedy, Ceko will furnish only that portion of the Confidential Information which he is advised by counsel is legally required, will give SCB written notice of the information to be disclosed as far in advance as practicable and legally permissible, and will exercise his best efforts to obtain a protective order or other reliable assurance that confidential treatment will be accorded the Confidential Information so disclosed.

## 2.    General Provisions

2.1    Ceko agrees not to claim any right, title or ownership interest in the Confidential Information, all of which shall solely vest with SCB.  SCB makes no representation or warranty that the Confidential Information disclosed hereunder will not infringe or violate the intellectual property rights of any third party.

2.2    Neither this Agreement nor any rights or obligations hereunder may be assigned by Ceko without the prior written consent of SCB, which consent shall not be unreasonably withheld.

2.3    No waiver by either Party of any provision or any breach of this Agreement constitutes a waiver of any other provision or of any other breach of this Agreement, and no waiver shall be effective unless made in writing.  The right of each Party to require strict performance and observance of any obligations hereunder shall not be affected in any way by any previous waiver, forbearance or course of dealing.

2.4    This Agreement is acknowledged to have been made in and shall be construed, governed, interpreted and enforced in accordance with the substantive laws of the State of Connecticut, without giving effect to its conflict of laws provisions.  Any disputes under this Agreement shall be subject to the exclusive jurisdiction and venue of the federal and state courts located in Stamford, Connecticut, and the Parties hereby consent to the personal and exclusive jurisdiction and venue of these courts.

2.5    Ceko agrees that any breach of its obligations hereunder would cause irreparable harm to SCB for which money damages would not be an  adequate remedy at law.  Accordingly, SCB shall be entitled to seek injunctive or other equitable relief against any breach hereof, without the requirement of posting a bond, in addition to all other rights and remedies available to SCB at law or in equity.

2.6    This Agreement may be modified or amended only by a writing executed by the Parties with the same formality with which this Agreement has been executed.

2.7    In the event that any provision of this Agreement is determined to be invalid, unenforceable or illegal, then such provision shall be deemed to be superseded and this Agreement modified with a provision that most nearly corresponds to the intent of the Parties and is valid, enforceable and legal.

2.8    This Agreement constitutes the entire agreement between SCB and Ceko concerning the subject matter hereof, and supersedes all previous communications, representations, understandings, and agreements between them, either written or oral.

2.9    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall be deemed to constitute one agreement.  It is understood and agreed that if facsimile copies of this Agreement bearing facsimile signatures are exchanged between the Parties, such copies shall in all respects have the same weight, force and legal effect and shall be fully as valid, binding, and enforceable as if such signed facsimile copies were original documents bearing original signature.

*[Signature page follows.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

_____
Peter Ceko


**SOLID CONTACT BASEBALL, INC.**

By: _____
Name:  Robert A. Moss, Jr.
Its:  President


*[Signature Page to Confidentiality Agreement]*

# __Exhibit C__

**Wildman, Harrold, Allen & Dixon LLP**
225 West Wacker Drive
Chicago, Illinois 60606-1229
312-201-2000
312-201-2555 fax
www.wildmanharrold.com



**Jami A. Gekas**
312-201-2390
gekas@wildman.com

Wildman Harrold
*Attorneys and Counselors*

August 20, 2008

**<u>VIA FACSIMILE AND EMAIL</u>**

Mark D. Brookstein
GOULD & RATNER LLP
222 North LaSalle Street
Suite 800
Chicago, Illinois 60601
P: 312.899.1654
F: 312.236.3241
mbrookstein@gouldratner.com

    Re: Williams v. Solid Contact Baseball, Inc., Case No. 08-cv-2839

Dear Mark,

    As counsel for Solid Contact Baseball, Inc. ("SCB") we are in receipt of the purported "Verified Counterclaim" filed by your client, Mr. Peter Ceko, in this matter on Monday. The pleading appears to contain confidential, proprietary and sensitive business information which was made known to your client only through the course of his duties as a Director of SCB or through the recent inspection of SCB's books and records performed by your co-counsel at Schindler, Cohen & Hochman LLP on July 28, 2008.

    As an SCB Director, Mr. Ceko owed a duty to maintain the confidentiality of such information when it was made available to him. Mr. Ceko also signed a "Confidentiality Agreement" (an additional copy of which is attached hereto for your ease of reference) that requires him, as well as his "Representatives" (defined to include counsel), to maintain in "strict confidence" the SCB information disclosed to him. SCB considers Mr. Ceko's decision to disclose SCB confidential information in a public filing on Monday to be in breach of the Confidentiality Agreement and Mr. Ceko's fiduciary duties as a Director. We are equally concerned that Mr. Ceko's counsel was aware of these obligations and failed to take appropriate steps to protect the sensitive information.

    Without waiving any of its rights under the Confidentiality Agreement or the law, in order to prevent further harm to SCB, SCB requests that Ceko immediately: (i) withdraw the "Verified Counterclaim" and all related exhibits;

Mark D. Brookstein
August 20, 2008
Page 2



and (ii) take steps to ensure that these documents are removed from the Court's electronic filing system.

     If we do not receive written confirmation by end-of-day tomorrow (*i.e.*, Thursday, August 21, 2008) that Mr. Ceko has taken the steps set forth above, SCB will ask the Court to address the matter on an emergency basis.

     Sincerely,

     Jami A. Gekas

cc:    Michael Dockterman, Esq.
       Charles F. Morrissey, Esq.
       Thomas F. Clauss, Jr., Esq.
       Mark S. Kaduboski, Esq.
       David B. Schaffer, Esq.
       Rebecca L. Fine, Esq.

# **Exhibit D**



222 North LaSalle Street
Suite 800
Chicago, Illinois 60601
T: 312.236.3003
F: 312.236.3241
www.gouldratner.com

## Facsimile Transmittal Sheet

DATE:              August 21, 2008

TO:                Jami A. Gekas

COMPANY:           Wildman, Harrold, Allen & Dixon

FACSIMILE NO:      312.201.2555

COMPANY NO:

PAGES (INCLUDING COVER SHEET):  4.  If you have any problems with this transmission,
                                please call Debbie Schwartz at 312.236.3003,
                                ext. 229.

FROM:              Daniel C. McCabe

PHONE NUMBER: 312.899.1615

RE:                Williams v. SCB

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from
disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in
error, please notify us immediately by telephone so that we can arrange for the retrieval of the original message at no cost to you.
408382.1 107090.001



DANIEL C. McCABE
Direct Dial: 312.899.1615
dmccabe@gouldratner.com


222 North LaSalle Street
Suite 800
Chicago, Illinois 60601
T: 312.236.3003
F: 312.236.3241
www.gouldratner.com

August 21, 2008


**VIA FACSIMILE AND U.S. MAIL**
Jami A. Gekas
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Chicago, IL 60606
Fax: (312) 201-2555

      Re:    <u>Williams v. SCB</u>

Dear Jami:

      As counsel for Peter Ceko, both individually and on behalf of the shareholders of Solid Contact Baseball, Inc. ("SCB"), we are in receipt of your letter dated August 20, 2008 regarding the Verified Counterclaim that was originally filed on August 18, 2008. Your letter asserts that "the pleading appears to contain confidential and proprietary and sensitive business information," and that Mr. Ceko is thereby in violation of the "Confidentiality Agreement" that he executed in connection with the inspection of the books and records of SCB.

      Apart from the fact that your letter does not identify any of the supposedly "confidential and proprietary and sensitive business information" at issue, we strongly disagree with your characterization of the Verified Counterclaim. As an initial matter, the "Confidentiality Agreement" provides that the books and records may be inspected for any "proper purpose," without waiving any rights under the Federal Rules of Civil Procedure. As stated in our prior correspondence, the inspection of SCB's books and records is for the "proper purpose" of investigating corporate misconduct and malfeasance undertaken by SCB, Robert A. Moss, Sr. and Robert A. Moss, Jr.. Consequently, the Verified Counterclaim has been filed for the proper purpose of Mr. Ceko asserting claims against SCB and the Mosses, both individually and derivatively on behalf of the shareholders of SCB, resulting from that corporate misconduct and malfeasance, which has brought SCB to the brink of financial ruin. Moreover, Mr. Ceko is, without question, entitled to discovery of those documents under the broad discovery provisions of the Federal Rules.



Jami A. Gekas
August 21, 2008
Page 2

In any event, neither the Verified Counterclaim, nor the documents appended as Exhibits thereto, contain any proprietary or other confidential business information, and are therefore not in violation of the Confidentiality Agreement. Exhibit 1 is the By-Laws of SCB, which do not contain any trade secret or other proprietary or confidential commercial information of SCB. Exhibit 2 is the contract between SCB and Mr. Ceko, in his individual capacity, to invest $100,000.00 in return for 112,000 shares of SCB stock. Obviously, Mr. Ceko did not obtain a copy of that contract by virtue of his former position as Director, or in connection with the inspection of the books and records of SCB. SCB's breach of that contract forms the basis of Mr. Ceko's *individual* claim as a shareholder of SCB. Therefore, you are quite mistaken that Mr. Ceko agreed to maintain the confidentiality of his personal contract with SCB. Exhibits 3, 4, and 5 consist of the correspondence referenced above between Mr. Ceko and SCB regarding his request for information and subsequent demand to inspect the books and records of SCB. There is no possible basis upon which SCB can assert that those letters are somehow confidential. Finally, Exhibit 6 is the purported "Notice" of "Written Consent of the Stockholders To Action Taken Without A Meeting," which was provided to all of the *shareholders* of SCB, including Ceko. Again, Mr. Ceko did not obtain those documents by virtue of his former position as Director, or through the inspection of SCB's books and records. Instead, they were emailed to him directly on June 26, 2008. Indeed, the "Notice" of "Written Consent of the Stockholders To Action Taken Without A Meeting" was for the very purpose of *removing* Mr. Ceko as Director of SCB. Those documents do not contain any proprietary or other confidential information concerning SCB.

It thus appears to be your view that any document that somehow relates to SCB is *ipso facto* "confidential and proprietary and sensitive business information." We would welcome citation to any authority that you have in support of that proposition, but do not expect it in light of the Seventh Circuit's ruling in *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 859 (7th 1994) (party must establish "good cause" for designating material as confidential).

Otherwise, based upon the above, your threat to seek emergency relief from the Court if we do not withdraw the Verified Counterclaim is both unfounded in law or fact, and a further example of SCB's bad faith. As such, Mr. Ceko will not forego his right to prosecute this action individually and on behalf of the Shareholders of SCB.

Additionally, we assume that your letter constitutes your refusal to accept service on behalf of SCB and the Mosses. This is remarkable considering that we willingly agreed to accept service of your Third-Party Complaint on behalf of Mr. Ceko and Cekom. Accordingly, we will serve those parties personally. In addition, we will seek all available remedies under Rule 4(d) resulting from your bad faith refusal to waive service, including costs of service and attendant attorneys' fees.

Finally, on a related topic, the books and records provided by SCB are woefully deficient. Just by way of example, the documents do not include financial information such as SCB's general ledgers, or its financial statements and supporting work-papers. Such information certainly should exist in the "books and records" of SCB. The only financial information that has ever been provided to Mr. Ceko is a single documents ostensibly called "Solid Contact

Jami A. Gekas
August 21, 2008
Page 3

Baseball Financial Report," which only covers the period from January 1, 2007 to May 31, 2008,
and which does not include any backup materials.  Therefore, please confirm immediately
whether additional SCB books and records exist.  If so, please arrange to have them sent to us as
soon as practicable.

Sincerely,

GOULD & RATNER LLP

Daniel C. McCabe

DCM:djs

cc:  Mr. Peter Ceko
     Charles F. Morrissey, Esq.
     Rebecca L. Fine, Esq.